**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DARREN WEBB**                                                                         **PLAINTIFF**

**v.**                                           **4:08CV00191-WRW**

**U.S. FOOD SERVICE**                                                         **DEFENDANT**

## ORDER

Pending are Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 18)

and Defendant's Motion for Summary Judgment (Doc. No. 21). Each party has responded.[1] For

the reasons set out below, both Motions are DENIED without prejudice and this case is

REMANDED.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[2]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[3]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should only be granted when the movant has established a right to the

---

[1]Doc. Nos. 28 and 24, respectively.

[2]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

judgment beyond controversy.[4]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[5]  I must view the facts in the light most favorable to the party opposing the motion.[6]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

## II. BACKGROUND

Defendant employed Plaintiff as a delivery driver in 1999.[9] On or about February 3, 2006, Plaintiff was unable to work because of sleep apnea, back problems, and knee problems.[10] Plaintiff filed a short term disability ("STD") claim, and began receiving STD benefits on

---

[4]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[5]*Id.* at 728.

[6]*Id.* at 727-28.

[7]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[8]*Anderson*, 477 U.S. at 248.

[9]Doc. Nos. 23, 26.

[10]*Id.*

February 13, 2006.[11] Between February 3, 2006, and March 9, 2009, Plaintiff got treatment at the

Baptist Health Sleep Clinic ("Sleep Clinic") for sleep apnea and from Dr. John Wolverton for

back and knee pain.[12] On March 9, 2006, The Hartford[13] faxed a request for Dr. Wolverton's

notes, and called in a request for the notes of Dr. Davila – Plaintiff's attending physician at the

Sleep Clinic.[14]

On March 14, 2006, The Hartford called Plaintiff, who told The Hartford that Dr. Davila

wanted information from the CPAP machine through March 22, 2006, before releasing Plaintiff

to work.[15] On March 15, 2006, The Hartford called Dr. Davila's office, and confirmed that

Plaintiff's  Continuous Positive Airway Pressure ("CPAP") machine would continue to be

monitored until March 22, 2006.[16]

On March 27, 2006, Dr. Wolverton faxed his notes and diagnosis back to The Hartford

stating that he had diagnosed Plaintiff with sleep apnea, and was investigating Plaintiff's back

---

[11]*Id.*

[12]*Id.*

[13]Defendant is the plan administrator. Defendant insured and administered its disability program through the Continental Casualty Company ("CNA"). The Hartford entered into an agreement with CNA to acquire and manage CNA's short-term disability business, among other businesses. Thus, The Hartford now administers Defendant's plan. Doc. No. 22; AR0069-0079.

[14]Doc. Nos. 23, 26; Administrative Record ("AR") 0122.

[15]AR0121.

[16]AR0120.

and knee pain.[17] Dr. Wolverton also noted that Plaintiff should be able to return to work on April 30, 2006.[18]

In an April 4, 2006, letter, The Hartford notified Plaintiff that his benefits would be extended until April 9, 2006, and requested more medical information in order to extend benefits beyond this date.[19] The Hartford's April 4, 2006, letter does not explain whether Plaintiff's benefits were extended in connection with sleep apnea, back and knee pain, or both.[20]

On April 4, 2006, The Hartford contacted Dr. Wolverton's office, and was told that the office would fax Dr. Wolverton's March 15, 2006, and March 27, 2006, examination notes, as well as the results of Plaintiff's MRI.[21] Dr. Wolverton's office faxed this information to The Hartford on April 4, 2006.[22] The additional notes indicated that Plaintiff had mild to modest disk degeneration at Lumbar 3-4 and had received treatment for sleep apnea by using CPAP.[23] Based on this information, The Hartford, in a April 19, 2006, extended Plaintiff's benefits through

---

[17]Doc. Nos. 23, 26.

[18]*Id.*

[19]*Id*; AR0038.

[20]*See* AR0038.

[21]AR0118.

[22]Doc. Nos. 23, 26; AR0039-0042.

[23]Doc. Nos. 23, 26.

April 30, 2006.[24] The Hartford's April 19, 2006, letter does not explain whether Plaintiff's benefits were extended in connection with sleep apnea, back and knee pain, or both.[25]

It appears that on April 4, 2006, Dr. Davila's office faxed The Hartford the report from Plaintiff's March 8, 2006, return visit to the Sleep Clinic.[26] The document reflects what Plaintiff reported about his own condition: "[t]he patient is waking up refreshed and without a headache. The patient is awake throughout the day and denies napping. There has been no reported drowsy driving or motor vehicle accidents due to sleepiness."[27] In a section titled "Laboratory," the report notes that the results from the sleep study diagnostic were still pending, and that the PSF therapeutic results were still pending.[28] The report shows a diagnoses of obstructive sleep apnea.[29] In a section called "Evaluation and Treatment Plans," the report reads:

> 4. Patient is requesting letter to National Guard and his work place which is U.S. Food Service stating his current condition and treatment and medical opinion on work activity in 2 weeks.
> 5. A download will be ordered to be obtained in 2 weeks [on March 22, 2006] to see if the patient is compliant getting an average of 6 hours nightly of CPAP therapy prior to the signature of those letters.[30]

---

[24]*Id.*

[25]*See* AR0045.

[26]AR0043.

[27]*Id.*

[28]AR0044.

[29]*Id.*

[30]*Id.*

There is nothing in the record showing that The Hartford ever contacted Dr. Davila's office to follow up on the results of the sleep diagnostic or PSF therapeutic results. There is also no letter from Dr. Davila's office showing that Plaintiff had been released to return to work.

Also on April 4, 2006, The Hartford called Plaintiff.[31] The notes from the call read, in relevant part:

> He says he was cleared for RTW [return to work] for the apnea as of 3/22/06. He says currently being treated for back pain. He says AP has called him regarding results of 3/29/06 MRI and said he has degenerative disc. He says he was given pain medication, Celebrex 200 mg, hydrocone 650mg but medicine has not been effective. He says he is going to call AP office today because he was not able to move this morning.

During that same phone call, Plaintiff was apparently advised that, based on his concurrent condition -- his back problem -- his benefits would be extended through April 9, 2006.[32]

On May 3, 2006, Dr. Wolverton faxed a statement of continued disability that stated that Plaintiff had degenerative disk disease at the L3-L4 region of the back, which, in the doctor's opinion, restricted Plaintiff from lifting more than 10 pounds and driving for long distances and times.[33] In a May 25, 2006, letter, The Hartford informed Plaintiff that, under the plan's definition of "disabled," Plaintiff was not disabled.[34] In that letter, The Hartford detailed that Plaintiff received treatment for sleep apnea and degenerative disc disease.[35] The Hartford also

---

[31]AR0118.

[32]AR0101.

[33]Doc. Nos. 23, 26.

[34]*Id.*

[35]*Id.*

asserted in its letter that each disease had been thoroughly analyzed, thus providing reasons for

which Plaintiff could no longer be considered disabled; Plaintiff denies that assertion.[36]

Plaintiff appealed The Hartford's decision.[37] In support of his appeal, Plaintiff faxed a

letter, dated May 31, 2006, from Dr. Davila stating that Plaintiff is a patient of the Sleep Clinic

and is receiving treatment for sleep apnea, and that Plaintiff could not be cleared to return to

work.[38] The Sleep Clinic sent another letter, dated July 6, 2006, to the Appeals Administrator,

informing the Administrator that Plaintiff's daytime sleepiness persists, which would prevent

him from driving.[39]

After reviewing all the information in Plaintiff's file, The Hartford upheld the initial

decision to deny benefits.[40] As the reason for upholding the initial decision for denial of benefits,

The Hartford cited lack of supporting medical evidence proving disability.[41]

Plaintiff's Motion for Judgment on the Administrative Record questions the standard of

review that should be used in this case.[42] Plaintiff also contends that his claim was not given a

full and fair review.[43]

---

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]Doc. Nos. 23, 26.

[40]*Id.*

[41]*Id.*

[42]Doc. No. 20.

[43]*Id.*

## III. DISCUSSION

### A. Standard of Review

The appropriate standard of review in this case is the abuse of discretion standard.[44] There is no evidence in the record that warrants applying a different standard.

### B. Full and Fair Review

Plaintiff asserts that his benefits were denied based on a medical decision, and points out that when benefits are denied based in whole or in part on medical judgment, then an independent review is required.[45]  Defendant maintains that there was no medical judgment involved in its decision to deny Plaintiff's benefits, but that the decision was based on contract -- that the decision resulted from Plaintiff's failure to meet the definition of "disabled" under the plan.

Defendant cites *Stanford v. Continental Casualty Company*[46] in support of its position that it was not necessary for a medical professional to review Plaintiff's case.[47] Defendant maintains that, like in *Stanford*, it did not dispute the treating physician's findings.[48] In the *Stanford* case, however, "a registered nurse consultant with Continental spoke to Stanford's treating physician, who indicated that Stanford no longer suffered any impairment that would

---

[44]*Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008).

[45]Doc. No. 32; 29 C.F.R. § 2560.503-l(h)(3)(iii).

[46]514 F.3d 354 (4th Cir. 2008).

[47]Doc. No. 29.

[48]Doc. No. 36.

prevent him from performing the duties of his occupation . . . ."[49] "Continental did not dispute the medical judgment of Stanford's treating physician that Stanford suffered no physical impediment to the performance of his work but remained at risk of relapse if he returned to an environment where he was required to administer Fentanyl. This risk of relapse did not fall within the benefit plan's definition of 'disability.'"[50]

*Stanford* is different from the case at hand. In *Stanford*, the plaintiff's treating physician clearly said the plaintiff was able to return to work -- it was the risk of relapse that did not fall into the plan's definition of disability. Here, Plaintiff apparently indicated in a telephone call that he was cleared to return to work, but, beyond that statement, the record is bare in connection with Plaintiff's sleep apnea condition. Nothing in the record indicates that The Hartford contacted the Sleep Clinic after the March 22, 2006, download to check if Plaintiff was compliant in connection with Plaintiff's CPAP therapy.

I note that The Hartford verified Plaintiff's statement that his treatment at the Sleep Clinic was continuing,[51] but did not follow up about Plaintiff's remark that he had been cleared to return to work -- especially noteworthy since the record of Plaintiff's March 8, 2008, visit to the Sleep Clinic shows that Plaintiff would not be cleared to return to work until the attending physician received further information about Plaintiff's treatment. Defendant relied on Plaintiff's statement over the telephone that he had been cleared to return to work, but discredited Dr.

---

[49] *Stanford v. Continental Casualty Company*, 514 F.3d 354, 356 (4th Cir. 2008).

[50]*Id*. at 360.

[51]AR0120.

Davila's letter, sent in at the appeals stage, that provided Plaintiff was undergoing treatment for apnea and was unable to return to work.

Defendant contends that in the letter at AR0045, The Hartford asked for additional objective evidence to support the assertion of Mr. Webb's disability.[52] Defendant then contends that the benefits administrator received the two letters at AR0052 and AR0054 that cited no objective evidence supporting Mr. Webb's claim.[53] The letters at AR0052 and AR0054, however, don't seem to be in response to the letter at AR0045; the letters at AR0052 and AR0054 appear to be in response to The Hartford's May 25, 2006, letter at AR0049, which informed Plaintiff that he no longer met the plan's definition of disabled, and informed Plaintiff of his appeal rights. I note that the appeals letter at AR0049 does not direct Plaintiff to submit treatment notes, therapy summaries, *etc.*, but simply informs Plaintiff he "may submit written comments . . . related to [his] claim," but that Defendant states as a rationale for denying benefits that the letters at AR0052 and AR0054 contain no objective medical evidence. [54]

Ultimately, based on the evidence in the administrative record, Defendant found that Plaintiff was not "disabled" as defined by the plan.

Under the plan, a person is disabled if all of the following apply:

[t]he disability began while you were covered under the STD plan; [y]ou are continuously unable to perform all the substantial and material duties of your own occupation; [y]ou are under the regular care of a licensed physician; [y]ou are not collecting unemployment insurance; [y]ou are not gainfully employed in any

---

[52]Doc. No. 36.

[53]*Id.*

[54]AR0050.

occupation for which you are or become qualified by education, training, or experience.[55]

## CONCLUSION

Considering the record, it seems to me that the evidence bearing on Plaintiff's claim was not properly developed. Further, there were no adequate findings with respect to the decision to deny benefits, and the rationale for the decision was not adequately explained. "A reviewing court must remand a case when the court or agency fails to make adequate finding or explain the rationale for its decision. This remedy is appropriate in ERISA cases"[56] Accordingly, both motions for summary judgment (Doc. Nos. 18, 21) are DENIED without prejudice. This case is remanded to Defendant and its plan administrator, The Hartford, for further findings.

IT IS SO ORDERED this 9th day of March, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[55]AR0006.

[56] *Abram v. Cargill, Inc*., 395 F.3d 882, 887 (8th Cir. 2005). See also *Harden v. Am. Express Fin. Corp*., 384 F.3d 498 (2004) (remanding ERISA case where plan administrator failed to obtain and consider Social Security records after implying to employee that it would); *Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir. 1983) (remand is proper when the district court believes the administrator failed to develop critical evidence in connection with benefits determination).